**2013-1680**

# United States Court of Appeals
# for the Federal Circuit

MALICO, INC.,

*Plaintiff - Appellant,*

*v.*

COOLER MASTER AND LSI LOGIC CORPORATION,

*Defendant – Appellee.*

*Appeal from the United States District Court from the Northern District of California in Case No. C 11-4537 RS, Honorable Richard Seeborg.*

# CORRECTED
# BRIEF FOR PLAINTIFF – APPELLANT

PHILIP P. MANN
MANN LAW GROUP
1218 Third Avenue, Suite 1809
Seattle, Washington 98101
(206) 436-0900

JOHN WHITAKER
WHITAKER LAW GROUP
1218  Third Avenue, Suite 1809
Seattle, Washington 98101
(206) 436-8500

*Attorneys for Plaintiff - Appellant
Malico, Inc.*

January 3, 2013

## CERTIFICATE OF INTEREST

Counsel for Appellant MALICO, INC., certifies the following:

1.     The full name of every party or amicus represented by me is:

Malico Inc.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Malico Inc.

3.     The parent companies, subsidiaries (except wholly-owned subsidiaries), and affiliates that have issued shares to the public, of the party or amicus represented by me are:

None

4.     The name of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Philip P. Mann
MANN LAW GROUP
1218 Third Avenue, Suite 1809
Seattle, WA 98101
206-436-0900

        and

John Whitaker
WHITAKER LAW GROUP
1218 Third Avenue, Suite 1809
Seattle, WA  98101
206-436-8500

# TABLE OF CONTENTS

I.    STATEMENT OF RELATED CASES.................................................1

II.    APPELLATE JURISDICTIONAL STATEMENT..........................2

III.    STATEMENT OF THE ISSUES..................................................3

IV.    STATEMENT OF THE CASE......................................................4

V.    STATEMENT OF THE RELEVANT FACTS................................5

VI.    SUMMARY OF THE ARGUMENT.............................................8

VII.    ARGUMENT..............................................................................10

    A.    Standard of Review.........................................................10

    B.    The District Court Erred By Concluding That The '484 Patent Is Invalid.......................................................................................10

        1.    The District Court Improperly Relied On Hindsight Bias To Reach The Claimed Device.....................................................................11

            (a)    The "Rotation" Element...................................................12

            (b)    The "Pair of positioning columns" and "Pair of retaining edges" Are Absent From The Art.......................................................16

            (c)    The "resilient leg having a bent" Element Is Absent From The Prior Art...................................................................................19

        2.    Secondary Considerations Of Non-Obviousness..........................22

        3.    The District Court Erred By Holding That The Prior Art References Themselves Are Not "Evidence"...................................23

    C.    The District Court Erred In Concluding That There Was No Evidence That Defendants Continued Selling Accused Products After March of 2009 25

VIII.    CONCLUSION........................................................................27

# TABLE OF AUTHORITIES

## TABLE OF CASES

*Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1318 (Fed. Cir. 2008)......................10

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)................................10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)................................10

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998)........................................................................... 10

*KSR International Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007)........................11

*Graham v. John Deere Co.*, 383 U.S. 1, 36 (1966)................................11

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342 (Fed. Cir. 2012)11

*Innogenetics*, 512 F.3d at 1374 n. 3................................11

*Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1149 (Fed. Cir. 2005).......................15

*Hockerson-Halberstadt, Inc. v. Avia Group Intern., Inc.*, 222 F.3d 951, 956 (Fed. Cir. 2000)......................................................................... 15

*In re Wright,* 569 F.2d 1124, 1127 (C.C.P.A. 1977)................................15

*Continental Can Co. USA v. Monsanto Co.*, 948 F.2d 1264 (Fed Cir. 1991)........22

*Meyer Intellectual Properties Ltd. v. Bodum Inc.*, 690 F.3d 1354, 1374 (Fed. Cir. 2012).......................................................................... 24

*Wyers v. Master Lock Co.*, 616 F.3d 1231, 1242 (Fed. Cir. 2010).......................24

*Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1573 (Fed. Cir. 1984).......24

## TABLE OF STATUTES

28 U.S.C. § 1338(a)................................................................. 2

28 U.S.C. § 1295(a).................................................................. 2

Fed. R. Civ. P. 56(c)............................................................... 10

## I.    STATEMENT OF RELATED CASES

Counsel is unaware of any other appeal in or from the same civil action or proceeding as this matter that was previously before this or any other appellate court.   However, a matter substantially similar to the instant matter was before this Court on appeal from the District Court of the Western District of Washington, Case No. 09-cv-0732, decided by this Court on May 16, 2011 in Appeal No. 2010-1459.

There are no other cases known to counsel pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

## II.   APPELLATE JURISDICTIONAL STATEMENT

(a)   Jurisdiction in the District Court was based upon 28 U.S.C. § 1338(a).

(b)   This Court's jurisdiction is based on 28 U.S.C. § 1295(a), this being an appeal from a final decision of a District Court having jurisdiction under 28 U.S.C. § 1338(a).

(c)   This appeal is timely under Fed. R. App. P. 4.  A final judgment was entered by the District Court on August 20, 2013.  A timely Notice of Appeal to this Court was filed on September 17, 2013.

### III.   STATEMENT OF THE ISSUES

1.     Did The District Court Err By Improperly Applying Hindsight Bias To Modify The Prior Art Teachings?

2.     Did The District Court Err By Finding The '484 Patent Invalid Even Though All Of The Elements Of The Claims Were Not Present In The Prior Art?

3.     Did The District Court Err By Limiting Malico's Damages Period Despite Overwhelming Evidence That Defendants Were Continuing To Sell Accused Products?

## IV.   STATEMENT OF THE CASE

Appellant Malico Inc. ("Malico") brought this action for patent infringement in the Northern District of California on September 13, 2011. This action was a renewed action brought against Appellees Cooler Master USA, Inc. ("Cooler Master) and LSI Logic Corporation ("LSI") (collectively "Defendants") after a similar action against only Cooler Master USA, Inc. was dismissed for lack of personal jurisdiction in the Western District of Washington. This matter proceeded through discovery, and Defendants filed two summary judgment motions: A Motion for Summary Determination of Damages and a Motion for Summary Judgment of Invalidity.   Malico brought its own Motion for Summary Judgment of Infringement.

After oral argument, the District Court denied Malico's Motion for Summary Judgment of Infringement, and granted Defendants' Motion for Summary Judgment of Invalidity.  The District Court granted Defendants' Motion for Summary Determination of No Damages as to Cooler Master but denied the motion as to LSI.  This appeal ensued.

## V.    STATEMENT OF THE RELEVANT FACTS

This is an action for patent infringement based on U.S. Patent No. 6,476,484 (the '484 patent) assigned to and owned by Appellant Malico, a foreign corporation with its headquarters in Taiwan.  The '484 patent is directed to a heat sink used in computer-based electronic equipment and covers a unique heat sink product that has been well received in the marketplace. (A1063, A1067-A1071). The heat sink is particularly effective and useful for mounting and cooling electronic components (so-called "chips") of different thicknesses.  See '484 Patent at col. 1, lines 52-65. (A104).

Through use of the claimed invention, one heat sink can be adapted for use on chips of varying thickness as compared to any previous device. (*Id*.) This simplifies manufacture and inventory, which reduces cost, by permitting a single product to serve multiple roles.  Malico makes and distributes actual heat sink products covered by the patent and has successfully marketed its patented heat sink to consumers in the United States and elsewhere. (A1069).

Malico is in the business of manufacturing and selling component parts used in the computer products industry. In the early 2000s, Malico and Cooler Master Taiwan enjoyed a mutually beneficial business arrangement. In particular, Malico made heat sinks of the type covered by its '484 patent and sold them to Cooler Master. (A63) Cooler Master, in turn, sold the heat sinks to manufacturers of larger computer components, such as "MegaRAID" computer boards assembled and sold in the United States by LSI Corporation, the other defendant in this matter. (A88)

In or around 2005, while Cooler Master and Malico still enjoyed a jointly beneficial business relationship, Cooler Master Taiwan asked that Malico provide it with detailed engineering drawings and other documentation detailing the construction of the heat sinks covered by Malico's '484 patent. (A63-64). Trusting Cooler Master, and believing them to be a good customer, Malico, to its later regret, provided the information. (*Id.*) Shortly thereafter, Cooler Master's purchases of the patented heat sinks fell off substantially, and ultimately the business relationship ended. Malico has not supplied any of the patented heat sinks to Cooler Master since 2006. (A1068).

6

In 2008, Malico discovered to its dismay that LSI was selling computer boards in the United States that included heat sinks that appeared strikingly similar to Malico's patented design. Malico contacted LSI only to learn that the heat sinks in question were being purchased from Cooler Master. (A1069). This was surprising and disturbing, given that Cooler Master had not purchased any of Malico's heat sinks for several years. (*Id.*) Furthermore, given the number of heat sinks Malico had provided in earlier years, and the volume of products LSI supplies to the domestic market, it was inconceivable Cooler Master was simply selling off existing inventory. (A1068). Malico was left with no choice but to sue under its '484 patent.

## VI.   SUMMARY OF THE ARGUMENT

The District Court made three fundamental errors in its Order dismissing Malico's case.

First, the District Court erred by concluding that the prior art discloses each element of the claims of the '484 Patent. Several elements of the claims, including the key element of the claims – that the heat sink accommodates components of different thicknesses by rotating the retaining device – are nowhere disclosed in the prior art. However, the District Court erroneously relied upon the *Smithers* reference as teaching that element even though *Smithers* does not, nor can it properly be found to.

Second, the District Court fell victim to improper hindsight bias in concluding that the prior art teachings could either be modified or combined to reach the claims of the '484 Patent. None of the prior art references, in any combination, teach the entirety of the claims of the '484 Patent. However, the District Court combined and modified several references using nothing but the teachings of the '484 Patent as a guide.

Such a combination improperly relies on hindsight bias and cannot support a holding of invalidity.

Third, the District Court erred when it limited Malico's damages period by failing to consider substantial evidence that Defendants continued to offer-to-sell and to actually sell accused products long after March of 2009. Malico submitted substantial, uncontroverted evidence that Defendants continued to sell accused products well past at least March of 2010, and continued to offer-to-sell products up to as late as the week of the summary judgment motion hearing. The District Court improperly ignored that evidence when it concluded that Defendants had ceased using the accused products by March of 2009.

# VII.  ARGUMENT

## A.    Standard of Review

This Court reviews a district court's grant of summary judgment of invalidity on grounds of obviousness *de novo*. *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1318 (Fed. Cir. 2008). Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Thus, summary judgment may only be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In deciding whether summary judgment was appropriate, this Court views the evidence in a light most favorable to the nonmoving party and resolves doubts in its favor. *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp*., 149 F.3d 1309, 1315 (Fed. Cir. 1998).

## B.    The District Court Erred By Concluding That The '484 Patent Is Invalid

As set forth below, the District Court committed reversible error by improperly relying on hindsight bias to modify the disclosures of the prior art well beyond their teachings to reach the claims of the '484 Patent.

### 1.   The District Court Improperly Relied On Hindsight Bias To Reach The Claimed Device.

As the Supreme Court has stated "A factfinder should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon ex post reasoning." *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007)(quoting *Graham v. John Deere Co.*, 383 U.S. 1, 36 (1966)(warning against a "temptation to read into the prior art the teachings of the invention in issue" and instructing courts to " 'guard against slipping into the use of hindsight'")).

This Court has confirmed that "[w]e must still be careful not to allow hindsight reconstruction of references to reach the claimed invention without any explanation as to how or why the references would be combined to produce the claimed invention." *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342 (Fed. Cir. 2012)(citing *Innogenetics*, 512 F.3d at 1374 n. 3.)

Several key elements of the '484 Patent claims are not taught by any of the prior art references, and the District Court performed nearly no analysis of the actual prior art references in its validity discussion. (A19-A20). Rather, the District Court merely accepted Defendants' expert

testimony at face value regarding ways that the prior art could be modified to reach the '484 Patent claims. No motivation for such un-disclosed modifications was provided other than Defendants' litigation-fueled desire to reconstruct the '484 Patent from various and sundry prior art references. Such hindsight reconstruction is improper and should be rejected.

### (a)    The "Rotation" Element

Both claims of the '484 Patent recite that "the bent of each resilient leg is placed on a [pad or recess] when said retaining device is positioned on said heat dissipater in said first orientation, and each resilient leg is placed directly on said top surface when said retaining device is positioned on said heat dissipater in said second orientation." (A99-A105, A105). The thrust of this limitation is that if the retaining device of the heat sink is rotated between two orthogonal orientations, it will rest either on the top surface of the heat sink, or on a pad or recess on the top surface. The difference in height between the top surface and either the pad or recess alters the installed height of the heat sink. (A104).

The image below reflects the two different  orientations of the heat sink retaining device of the '484 Patent:



| *First Orientation (Fig. 1)* | *Second Orientation (Fig. 2)* |

In its Order, the District Court acknowledged that "[t]he gist of this invention is to provide a heat sink dissipater with a retaining device and a heat dissipater in such a way that the retaining device and the heat dissipater can accommodate CPU assemblies of different thickness by rotating the retaining device or the heat dissipater 90 degrees when they are secured to a CPU assembly." (A4)(quoting the prosecution history of the '484 Patent). Yet even though the rotation element was characterized as the "gist of the invention," the District Court failed even to mention it in its Order. (A19-A21). Instead, the District Court apparently fell victim to hindsight bias when it accepted as fact Dr. Carman's (Defendants' expert) conclusion that *Smithers* (USP 5,276,585) taught the missing "rotation" element.

13

However, *Smithers* does not. Reproduced below is Fig. 1 of *Smithers* showing the general arrangement of the device. (A598-A603).



*Fig. 1 of Smithers (A599)*

Dr. Carman (Defendants' expert) conceded that *Smithers* contains no explicit teaching that the retaining device 30 of *Smithers* may be rotated orthogonally. (A561). Rather, Dr. Carman "interpreted" the figures to conclude that the retaining device should be capable of being rotated 90

degrees even though the reference includes no statement of that capability for any purpose. (*Id*.) Dr. Carman cited no motivation whatsoever for doing so, nor is any motivation for doing so taught or suggested in *Smithers*, or in any other reference.

Dr. Carman's interpretation is contrary to law, and the District Court should have rejected it. More specifically, regardless of what the *Smithers* drawings may appear to depict, "it is well established that patent drawings do not define the precise proportions of the elements and may not be relied on to show particular sizes if the specification is completely silent on the issue." *Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1149 (Fed. Cir. 2005) (citing *Hockerson-Halberstadt, Inc. v. Avia Group Intern., Inc.*, 222 F.3d 951, 956 (Fed. Cir. 2000)). Thus, "[a]bsent any written description in the specification of quantitative values, arguments based on measurement of a drawing are of little value." *Avia*, 222 F.3d at 956) (quoting *In re Wright*, 569 F.2d 1124, 1127 (C.C.P.A. 1977)).

As conceded by Dr. Carman, the *Smithers* reference provides no objective basis for evaluating whether the retaining device could, in fact, be rotated 90 degrees while still allowing the beams 33, 34 to be inserted between the pins. Rather, Dr. Carman merely "interpreted" the drawings to

15

make that conclusion using nothing except the '484 Patent as a template. In short, there is absolutely no motivation to rotate the retaining device of *Smithers* other than as a hindsight reconstruction of the '484 Patent claims.

Still further, the *Smithers* reference directly contradicts Dr. Carman's assertion that it would be obvious to modify it to achieve the invention of the '484 Patent. More specifically, the Smithers reference makes clear that it must be designed specifically to accommodate only one thickness of the electronic component ("device package") to which the heat sink is attached. (A600 at col 2, lines 58-68). In other words, *Smithers* expressly conditions the dimensions of its heat sink to *prevent* exactly the benefits achieved by the '484 Patent. Dr. Carman's assertion that it could be modified to reach the claims of the '484 Patent ignores that Smithers explicitly teaches away from the entire purpose of the '484 Patent. For these reasons, Dr. Carman's and the District Court's conclusions are improper hindsight reconstructions of the '484 Patent and cannot serve as evidence of invalidity.

**(b)   The "Pair of positioning columns" and "Pair of retaining edges" Are Absent From The Art**

Claim 1 of the '484 Patent recites a retaining device "having a pair of positioning columns formed on *first* two opposite sides" and "a pair of

retaining edges formed on *second* two opposite sides." The District Court did not analyze this claim element either in its Order. (A19-A20). The plain language of the claim requires that "positioning columns" are found on a first two opposite sides, and "retaining edges" are found on a second two opposite sides.

Referring to the figure below (Fig. 1 of *Smithers*), the portion of the mounting clip that Defendants argue correspond to the pair of positioning columns is shown as support member 38. The portion of the mounting clip that Defendants argue corresponds to the pair of retaining edges is shown as flange 36 with flange 37. (A605-A606).



*Excerpt of Fig. 1 of Smithers*

The specification of *Smithers* describes pocket 35 as being formed by an outer flange 36 and a bottom flange 37, both extending from a support member 38 which depends from an end of the edge frame. (A600-A601) Importantly, the pocket 35, outer flange 36, bottom flange 37, and support member 38 are identical for all four corners of the mounting clip 30. (*Id.*) Illustration 1 explicitly shows that each of the four corners have the identical construction. Thus, the District Court must have concluded (without discussion) that the pocket 35 formed by an outer flange 36 and a bottom flange 37, both extending from a support member 38 which depends from an end of the edge frame, which are the same for all four corners of the mounting clip 30 simultaneously disclose both the recited "pair of positioning columns" and the "pair of retaining edges."

But that position ignores that these two elements (positioning columns and retaining edges) are different and that they *must* be on two different pairs of opposite sides. Thus, the corner pocket 35 found on each corner of the mounting clip can not possibly teach or suggest a retaining device with both "a pair of positioning columns formed on first two opposite sides" and "a pair of retaining edges formed on second two opposite sides." The District Court did not perform any analysis of these

18

claim elements, nor point to anything in the prior art or elsewhere to support its implicit finding that *Smithers* teaches these elements. Again, the District Court can only have fallen victim to hindsight bias in corresponding terms from the '484 Patent claims to pieces of the prior art. Accordingly, the District Court's conclusion was in error.

### (c)    The "resilient leg having a bent" Element Is Absent From The Prior Art

The District Court also erred by failing to recognize that the prior art did not teach or suggest "resilient legs having a bent" as properly construed by stipulation. Claims 1 and 2 of the '484 Patent recite "resilient legs extending inwards from said first or second two opposite sides" and "said resilient legs each having a bent." (A105). The "bent" referred to in the claim language was construed by stipulation to mean "material that extends from the resilient leg in a generally different direction" (A171-A174, A172). Below is a portion of Fig. 1 of the '484 Patent showing that the "bent 221" is indeed "material that extends from the resilient leg 22 in a generally different direction" exactly as the parties construed the term.

19



*Excerpt of Fig. 1 of '484 Patent*

In contrast, the District Court adopted Dr. Carman's position that the "curved beams" of Smithers satisfy the "bent" claim element. The "curved beam" (33, 34) of *Smithers* is shown below:



*Excerpt of Fig. 1 of Smithers*

The District Court erred by accepting Dr. Carman's opinion that the "curved beam" in *Smithers* is structurally equivalent to the "resilient leg with bent" shown above. (A20). The term "bent" as construed by the District Court requires that there be material extending from the resilient leg in a generally different direction.  Nowhere is that claim element met, nor do either Dr. Carman or the District Court address why it would have been obvious to add additional material to the "curved beam" of Smithers in a generally different direction. (*Id*.)  The District Court's conclusion that the "curved beam" is structurally equivalent to the "resilient leg with bent" completely ignores that the term "bent" was construed.  It is axiomatic that the construction of a claim element must be considered when determining whether a prior art reference discloses that element, otherwise why do the courts and litigants go to the trouble of the exercise?

It cannot be reasonably argued (by expert or otherwise) that the "curved beam" of *Smithers* includes "material that extends from the curved beam in a generally different direction" as it must to teach the "bent" of the '484 Patent claims as construed. Nor was any explanation provided for *why* one of ordinary skill in the art would add such material. Accordingly, the

District Court committed reversible error by ignoring that claim element in its finding of invalidity.

### 2.    Secondary Considerations Of Non-Obviousness

This Court has acknowledged that an invention appearing to be obvious in light of the prior art may use evidence of secondary considerations to establish that it is not.  Thus, when differences that may appear technologically minor nonetheless have a practical impact, particularly in a crowded field, the decision-maker must consider the obviousness of the new structure in this light.  Such objective *indicia* as commercial success, or filling an existing need, illuminate the technological and commercial environment of the inventor, and aid in understanding the state of the art at the time the invention was made. *Continental Can Co. USA v. Monsanto Co.*, 948 F.2d 1264 (Fed Cir. 1991).

Malico established that the volume of sales for the devices covered by Malico's Patent No. 6,153,932 dropped dramatically after the product covered by the '484 Patent was introduced to the marketplace.  In fact, demand for the product covered by the '932 Patent drastically diminished since the introduction of the product covered by the '484 Patent.  Chang Decl, Para. 11.  Because the difference between the '932 Patent and the '484

Patent is the features recited in Claims 1 and 2, there is a sufficient connection between the proven success and the patented invention, which should be considered in the determination of nonobviousness.

### 3.    The District Court Erred By Holding That The Prior Art References Themselves Are Not "Evidence"

The District Court stated that Malico did not present any evidence in opposition to Defendants' motion for summary judgment of invalidity. (A21). That statement is confusing given that the District Court, the Defendants, Defendants' expert, and Malico all relied on the *exact same evidence*: the prior art references themselves. The District Court seems to suggest that only Defendants are entitled to rely on the prior art references yet Malico cannot. That cannot be what the District Court meant. The prior art references are undeniably evidence.

What the District Court must have meant, then, is that Malico declined to present expert testimony to contradict the testimony of Defendants' expert. However, such expert testimony is unnecessary, especially in cases such as here where the invention is extremely easy to understand. There is no "invariable requirement that a prior art reference be accompanied by expert testimony," and the exclusion of evidence where

the technology involved is simple, merely because it was not addressed in an expert report, is error. *Meyer Intellectual Properties Ltd. v. Bodum Inc.*, 690 F.3d 1354, 1374 (Fed. Cir. 2012). Similarly, in *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1242 (Fed. Cir. 2010), this Court rejected the argument that expert testimony was required to consider prior art references when "the references and the invention are easily understandable." See also *Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1573 (Fed. Cir. 1984).

The invention of the '484 Patent is exceedingly simple to understand. The heat sink is not made of software, pharmaceuticals,  or electronic components. The device is a piece of plastic clipped to a piece of metal. There aren't even any moving parts. If ever there were an invention that did not require an expert to understand, this is it.[1] The District Court committed error by implicitly requiring expert testimony to consider the prior art references.

---

1  Of course, that is not to say that the simplicity of the invention suggests it is obvious. Simple solutions to complex problems are often the most difficult to conceive. After all, it took human beings tens of thousands of years to invent the wheel.

**C.    The District Court Erred In Concluding That There Was No Evidence That Defendants Continued Selling Accused Products After March of 2009**

The District Court made a factual finding that Defendants had ceased using the accused heat sink by March 2009. (A14). The District Court stated that fact was undisputed. (*Id*). However, the District Court was in error.

More specifically, Malico had filed a motion to compel further production of documents based on Malico's continuing investigation into Defendants' ongoing sales of accused products. (A234-A324). In that motion, Malico presented the District Court with ample evidence not only disputing Defendants' claim that they had ceased selling accused products, but in fact proving it wrong. For example, Malico presented the District Court with proof that Defendants had continued selling accused products as late as June of 2013. (A243-A244). Malico included proof in the form of an official LSI package insert bearing a copyright notice dated March of 2010. (A256, A316). Obviously, an accused product with an insert dated March of 2010 was not sold prior to March of 2009.

The District Court stated that "Malico's recent motion to compel further discovery on this topic was denied as untimely, so additional admissible evidence on it is unlikely to surface ." (A8, fn 2). However, the

District Court's assertion that *additional* admissible evidence contradicting Defendants' assertion is unlikely to surface is a tacit admission that Malico *did* present admissible evidence disproving Defendants' assertion. But the denial of a motion to compel as untimely does not mean all the evidence submitted in support of that motion simply disappears. The denial of the motion to compel simply meant, as the District Court stated, *additional* evidence was unlikely to surface. But the evidence that was presented continues to exist.

Malico properly presented, referred to, and specifically identified that evidence in its opposition to Defendants' summary judgment motion. (A1061-A1062, A1065, A1070, A1091-A1101). For some reason, the District Court never addressed any of the evidence presented by Malico that disputes Defendants' claim.

The District Court's failure to consider Malico's substantial evidence that Defendants continued to sell accused products long after March of 2009 constitutes reversible error. Accordingly, Malico asks this Court to reverse the District Court's grant of summary determination of no damages as to Cooler Master and any limitation of damages implied by the District Court's order as to LSI.

## VIII. CONCLUSION

Malico respectfully submits that the District Court erred in holding that the '484 Patent is invalid as obvious. In addition, Malico respectfully submits that the District Court's factual finding that Defendants ceased selling accused products in March of 2009 constituted clear error. Accordingly, Malico respectfully requests that the District Court's order be reversed as to those holdings.

Dated: December 19, 2013    Respectfully submitted

Philip P. Mann, WSBA No: 28860
MANN LAW GROUP
John Whitaker, WSBA No: 28868
WHITAKER LAW GROUP
1218 Third Avenue, Suite 1809
Seattle, Washington 98101
(206) 436-0900
*phil@mannlawgroup.com*
*john@wlawgrp.com*

Attorney for Plaintiffs-Appellents
Malico Inc.

# ADDENDUM

1
2
3
4
5
6
7   IN THE UNITED STATES DISTRICT COURT
8   FOR THE NORTHERN DISTRICT OF CALIFORNIA
9   SAN FRANCISCO DIVISION
10

11  MALICO, INC.                              No. C 11-4537 RS

12          Plaintiff,

13      v.                                    **ORDER DENYING PLAINTIFF'S
                                               MOTION FOR PARTIAL SUMMARY
14  COOLER MASTER USA, INC. and LSI            JUDGMENT OF INFRINGEMENT,
    LOGIC CORP.,                               GRANTING DEFENDANTS'
15                                             MOTIONS TO STRIKE AND FOR
            Defendants.                        SUMMARY JUDGMENT OF
16  _____/          INVALIDITY DUE TO
                                               OBVIOUSNESS, AND GRANTING IN
17                                             PART AND DENYING IN PART
                                               DEFENDANTS' MOTION FOR
18                                             SUMMARY DETERMINATION OF
                                               NO DAMAGES**
19

20              I.      INTRODUCTION

21      In this action for patent infringement, plaintiff Malico, Inc., avers that defendants Cooler

22  Master USA, Inc. (Cooler Master) and LSI Logic Corp. (LSI) have infringed on its United States

23  Patent Number 6,476,484 (the '484 Patent).  Malico moves for partial summary judgment holding

24  that the accused products infringe the asserted patent.  The motion is based entirely on a comparison

25  of a figure from the '484 Patent to photographs of what Malico contends is an accused product.

26  Defendants move to strike those photographs as inadmissible.  Defendants also move for a summary

27  determination that, regardless of their liability, plaintiff is not entitled to recover any damages.

28  Finally, defendants move for summary judgment on the basis that the '484 Patent is invalid due to

United States District Court
For the Northern District of California

obviousness. This order addresses each of the motions as well as the associated evidentiary objections. For the reasons discussed below, Malico's motion for partial summary judgment of infringement is denied, defendants' motions to strike and for summary judgment of invalidity are granted, and defendants' motion for summary determination of no damages is granted in part and denied in part.

## II. BACKGROUND

Malico first sued Cooler Master for infringement in the Western District of Washington on May 26, 2009. That case was dismissed for lack of personal jurisdiction. Malico filed the present action against both Cooler Master and LSI on September 13, 2011. It accuses Cooler Master product ECB-00101-01-GP (and variants thereof), which have been used as components of various LSI products, of infringing the '484 Patent. Cooler Master is a wholly-owned subsidiary of a Taiwanese company. Malico contends it infringed the '484 Patent by importing into, and selling, the accused products in the United States. LSI allegedly infringed the '484 Patent by being an indirect purchaser of the accused products, which were then incorporated into LSI products made, sold, or used in the United States.

### A. The Patented Device

The '484 Patent is entitled "Heat Sink Dissipater for Adapting to Thickness Change of Combination of a CPU and a CPU Carrier." A heat sink is a passive heat exchanger component that cools an electronic device by dissipating heat generated by the device into the surrounding air. The '484 Patent describes a heat dissipater that can be fixed onto a CPU with a retaining device (also described by the patent), capable of being configured to accommodate CPU assemblies with or without PC boards, even though the presence or absence of the PC board varies the thickness of the CPU assembly to which the heat dissipater must be fixed. Thus, the "problem" to be solved by the '484 Patent is that typically, adjusting the thickness of the combination of the CPU Assembly may require the added cost of a new heat dissipater.

The heat sink device covered by the '484 Patent accommodates this variation in thickness of the CPU because it can be affixed to it in two orientations. In the first, the legs protruding into the center of the square frame of the retaining device fall into the gaps between the fins on top of the

United States District Court

For the Northern District of California

heat dissipater.  In the second, when the square frame of the retaining device is turned ninety

degrees, the legs protruding into the center of it rest higher up, on "pads" between the fins on the

heat dissipater.  In both orientations, the bents at the end of the legs securely connect the heat sink

dissipater onto the CPU.

B.  Prosecution History

The original application for the '484 Patent advances broader versions of claims 1 and 2 than

what the PTO ultimately allowed.  The original claims read:

> 1. A heat sink dissipater for adapting to thickness change of a combination of a CPU
> and a CPU carrier, the heat sink dissipater comprising multiple rows and columns of
> fins; and pads integrally formed on opposite sides of a top face of the heat sink
> dissipater, whereby the heat sink dissipater is able to adapt to a change in thickness
> of the CPU and the CPU carrier.

> 2. A heat sink dissipater for adapting to thickness change of a combination of a CPU
> and a CPU carrier, the heat sink dissipater comprising multiple rows and columns of
> fins; and recesses defined in opposite sides of a top face of the heat sink dissipater,
> whereby the heat sink dissipater is able to adapt to a change in thickness of the CPU
> and the CPU carrier.

Declaration of Steven W. Flanders in Support of Defendants' Motion for Summary Judgment of

Invalidity (Flanders Invalidity Decl.), Ex. 1 (Original '484 Patent Application), Dkt. 98-3.  The

applicant presented the Examiner with the prior art in the form of United States Patent numbers

6,243,266 (Lo) 5,421,402 (Lin), and 6,153,932 (Liang), all describing various heat sinks, for

consideration alongside the claims of the application.  *See* Carman Decl., Exs. F. (Lin) & G (Lo),

Dkts. 98-14, -15; Flanders Invalidity Decl., Ex. 5 (Liang), Dkt. 98-7.  The Examiner rejected

original claim 1 as anticipated by Lo, stating "Fig. 1 of Lo '266 shows multiple rows and columns

of fins 34, pegs 40 formed on opposite sides of a top side of heat sink 30, where the heat sink 30, is

able to function with CPU packages of a range of thicknesses."  Flanders Invalidity Decl., Ex. 2

(Feb. 19, 2002 Office Action), Dkt. 98-4 at 2.  The Examiner also rejected original claim 2 for

obviousness over Lo in view of Lin, concluding:

> Fig. 1 and 3 of Lo '266 show a heat sink 30 which is able to work with CPU
> packages of a range of thicknesses comprising multiple rows of fins 34 and recesses

United States District Court

For the Northern District of California

57 and 60 on opposites sides of a bottom surface of the heat sink 30, where the heat sink 30 is able to accommodate CPU packages of different sizes.

Figure 2 of Lin '402 shows recesses 44 on top surface of heat sink apparatus 10.

It would have been obvious to one having ordinary skill in the art to form the recesses of Lo '266 on top surface of heat sink rather than on the bottom surface as taught by Lin in order to have better mechanical connectivity.

*Id.* at 3. In response to these rejections, the applicant cancelled original claims 1 and 2 and added the new claims that eventually issued as claims 1 and 2 of the '484 Patent. Flanders Invalidity Decl., Ex. 3 (Applicant's May 16, 2002 Response), Dkt. 98-5.

To distinguish the claims over the combination of Lo and Lin, the applicant added limitations that the retaining device is formed with resilient legs, that the heat dissipater is formed with pads or recesses, and that "the bent of each resilient leg is placed on a pad (recess) when said retaining device is positioned on said heat dissipater in a first orientation and each such resilient leg is placed directly on the top surface when said retaining device is positioned on said heat dissipater in a second orientation." *Id.* at 9. The applicant explained that "[t]he gist of this invention is to provide a heat sink dissipater with a retaining device and a heat dissipater in such a way that the retaining device and the heat dissipater can accommodate CPU assemblies of different thickness by rotating the retaining device or the heat dissipater 90 degrees when they are secured to a CPU assembly." *Id.*

The applicant distinguished the new claim language over Lo because there the patented device adapts to different thicknesses by utilizing pairs of locking recesses at different heights above the base. "Lo never teaches, suggests or anticipates the legs of the instant invention that fall into gaps between fins of a heat dissipater and the placement of the bents of the legs on pads/recesses or the top surface of the heat dissipater in two orthogonal orientations as recited in claims 3 and 4." *Id.* at 10.

The applicant distinguished the new claim language over the combination of Lo and Lin by stating that while Lin teaches a heat sink apparatus with recesses on the top surface of a heat sink, "the legs and the placement of the bents of the legs on pads or recesses of the instant invention to secure a CPU assembly of different thickness has never been mentioned or suggested." *Id.* The

United States District Court

For the Northern District of California

applicant argued that Lo and Lin do not disclose legs which fall into gaps between fins to be placed on pads/recesses or the top surface of a heat dissipater and that it would not be logical for a person with ordinary skill in the art to combine Lin and Lo to reach the invention recited in the new claims. *See id.* That is, the key distinguishing element is the addition of resilient legs that fall between the fins.

Based on these amendments and arguments, the Examiner issued a notice of allowability. Flanders Invalidity Decl., Ex. 4 (July 15, 2002 Notice of Allowability), Dkt. 98-6. The Examiner concluded that "prior art failed to show a heat sink retaining device with resilient legs and a heat dissipater formed with pads/recesses and the bent of each resilient leg is placed directly on the top surface when the retaining device is positioned on the heat dissipater in a first orientation and each resilient leg is placed directly on the top surface when the retaining device is positioned on the heat dissipater in a second orientation." *Id.* at 2.

The Examiner was not presented with prior art in the form of United States Patent numbers 5,276,585 (Smithers) or 5,729,43 (Marwah). *See* Carman Decl., Ex. C (Smithers), Dkt. 98-11; Carman Decl., Ex. E (Marwah), Dkt. 98-13. Smithers teaches a clip with parallel edge frames and pockets at each end connected by transverse beams to secure a heat sink with fins between those beams and the surface of the device package. Marwah teaches a heat sink apparatus with a thermally conductive spacer to accommodate CPU's and IC's of different thicknesses.

C. Fact Discovery

The case management scheduling order entered in this case mandated that non-expert discovery be completed by December 10, 2012. On August 31, 2012, Defendants served their first set of requests for production (RFPs) and interrogatories on Malico. Among other things, RFPs 6 and 13 demanded the production of "All DOCUMENTS CONCERNING any comparison or evaluation of any heat sink device manufactured or sold by PLAINTIFF to any of the ACCUSED PRODUCTS manufactured or sold by the DEFENDANTS" and "All DOCUMENTS CONCERNING any testing or analysis of any products that embody the claims of the PATENT-IN-SUIT." *See* Declaration of Steven W. Flanders in Support of Defendants' Motion to Strike Inadmissible Evidence in Plaintiff's Motion for Partial Summary Judgment of Infringement

(Flanders Mot. to Strike Decl.), Ex. A (Defendants' First Set of Requests for Production), Dkt. 110-2, at 8, 9. Malico responded that it would produce any relevant non-privileged documents responsive to these requests for production, and others, including RFPs 34 and 42. Flanders Mot. to Strike Decl., Ex. C (Plaintiff's Responses to Defendants' First Set of Requests for Production), Dkt. 110-4. At the end of fact discovery, Plaintiff had only produced 13 documents totaling 163 pages. All produced documents were emails or other correspondence between itself and the defendants. None of the produced documents contained technical evidence supporting plaintiff's infringement case. Malico did not produce the photographs it includes in its motion for partial summary judgment for infringement, which it characterizes as depicting an accused product. Nor did it officially produce a specimen of an accused product in response to the written discovery requests.

Malico contends that it produced such a specimen to defendants on at least three occasions: (1) it brought several accused products to an April 20, 2012, settlement conference between the parties, and showed them to defendants in the presence of the settlement judge, (2) it brought an accused product to a tutorial for the Court held on August 6, 2012, where it was presented as a demonstrative (the hearing transcript reflects that the product presented as a demonstrative at the tutorial was a Malico, as opposed to an accused, product), and (3) an email to defendants' counsel stating that "[o]ther documents are available for inspection at any convenient time" thereby making the accused products available for inspection on an ongoing basis. *See* Declaration of John Whitaker in Support of Malico's Reply in Support of Motion for Partial Summary Judgment (Whitaker Decl.), Ex. D. (Email from John Whitaker to Andrew Shupe et. al, Feb. 3, 2013), Dkt. 119-5.

Finally, Malico states the defendants inspected a specimen of an accused product at the deposition of John Chang, Assistant to the General Manager for Malico, on April 24, 2013. Defendants took the deposition of Chang as Malico's person most knowledgeable in response to their deposition notice pursuant to Federal Rule of Civil Procedure 30(b)(6). The deposition occurred after the close of fact discovery at Malico's request, in order to allow its corporate deponents to coordinate their travel to the United States with other business. Malico contends that the very product pictured in the contested photographs was a formal exhibit at that deposition. The

United States District Court
For the Northern District of California

deposition exhibit, however, is a photograph of the packaging of an LSI SCSI Host Bus Adapter product. Whitaker Decl., Ex. C (Exhibit 1 to the Deposition of John Chang), Dkt. 119-3. It is unclear whether that product utilizes the accused Cooler Master heat sink, Malico's own heat sink, or one manufactured by a third party, as a component.

In addition, defendants' interrogatory 3 asked plaintiff to "[p]lease describe with specificity any investigation conducted by you with respect to each claim set forth in your Complaint, including but not limited to the alleged infringement of the Patent-in-suit, including but not limited to the inspection, testing, evaluation, and/or analysis of any ACCUSED PRODUCTS . . . ." Flanders Mot. to Strike Decl., Ex. B (Defendants' First Set of Interrogatories), Dkt. 110-3. Malico provided no information in response beyond objecting that the interrogatory "improperly invades the attorney/client privilege and litigation work product doctrine . . . [and] does not call for any information relevant to any issues in this matter." Flanders Mot. to Strike Decl., Ex. D (Plaintiff's Responses to Defendants' First Set of Interrogatories), Dkt. 110-4.

Malico has produced no evidence in support of its claim for damages either through its initial disclosures under Federal Rule of Civil Procedure 26(a) or thereafter. In response to an interrogatory propounded upon it by Cooler Master demanding the bases of its claim for damages, Malico stated that the "interrogatory is premature in that Malico's damages investigation is ongoing and deadlines for expert reports have not yet arrived. Generally stated, Malico submits that its damages calculation shall be computed in accordance with the *Georgia Pacific* factors." Decl. of Steven Flanders In Support of Defendants Cooler Master and LSI's Motion for Summary Determination of Damages (Flanders Damages Decl.), Ex. H (Plaintiff's Responses to Cooler Master Interrogatories), Dkt. 99-10 at 10.[1] Malico never supplemented its response.

Malico's own discovery was limited to document requests and eleven interrogatories. In response to Malico's interrogatories, LSI stated that it ceased using any accused products by March of 2009. Malico does not dispute the accuracy of that response. Cooler Master, as reflected in data provided to Dr. Bruce D. Abrahamson, its own damages expert, shows that it imported allegedly

---

[1] Defendants' administrative motion to seal portions of their motion for summary determination of no damages and the exhibits to the Flanders Damages Declaration is granted, as they contain confidential sales information sealable under Civil Local Rule 79-5. *See* Dkt. 100.

United States District Court

For the Northern District of California

1    infringing products from 2004 to 2006. Malico engaged in no additional discovery beyond a motion

2    to compel defendants to produce additional evidence, which was denied as untimely. *See* Order

3    Denying Motion to Compel, Dkt. 124.

4               D.  Expert Discovery

5          The case management scheduling order set deadlines for service of plaintiff's expert reports

6    by February 4, 2013, and defendants' by March 4, 2013. Plaintiff did not serve such expert reports.

7    Defendants timely served a report from their technical expert, Dr. Gregory, opining that the accused

8    products do "not infringe the claims [of the '484 Patent] because, at least, [they] lack[] positioning

9    columns, as defined by the Court's claim construction, i.e. 'material that aligns the retaining device

10   and the heat dissipater, preventing movement.'" Declaration of Steven W. Flanders in Support of

11   Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment of Infringement

12   (Flanders Infringement Decl.), Ex. A (Carman Expert Rpt.), Dkt. 112-2 at 6-7. Defendants also

13   timely served an expert report on damages, authored by Dr. Abramson. While finding that Malico is

14   not entitled to any damages, Abramson opines that, even if so, the maximum damages to which

15   plaintiff could possibly be entitled, based on all infringing sales by both defendants, is a reasonable

16   royalty of six percent of $443,015, amounting to $26,580.90. Flanders Damages Decl., Ex. A

17   (Abrahamson Expert Report), Dkt. 99-3. Malico deposed neither of defendants' experts, and expert

18   discovery closed on May 6, 2013.[2]

19                        III.    LEGAL STANDARD

20         Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to

21   any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc.

22   56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of

---

23   [2] Plaintiff argues that Abrahamson's expert report on damages should be excluded because it relies
24   on defendants' representations that their infringement, if any, ceased in 2009. This objection is
     premised on a misunderstanding of the role of an expert in litigation. Federal Rule of Evidence 703
25   specifically states: "An expert may base an opinion on facts or data in the case that the expert has
     been made aware of or personally observed. If experts in the field would reasonably rely on those
26   kinds of facts or data in forming an opinion on the subject, they need not be admissible for the
     opinion to be admitted." The fact that he relied on material of which he was made aware by
27   defendants, even if Malico believes it to be untrue, is no basis for excluding his opinion. Malico has
     introduced no admissible evidence to counter LSI's interrogatory response that sales of the accused
28   products ceased in March 2009. Furthermore, Malico's recent motion to compel further discovery
     on this topic was denied as untimely, so additional admissible evidence on it is unlikely to surface.
     See Order Denying Plaintiff Malico, Inc.'s Motion to Compel, Dkt. 124.

United States District Court

For the Northern District of California

1   material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. Proc.

2   56(c)(1)(A). There is no genuine issue of material fact if "after adequate time for discovery and

3   upon motion, [a party] fails to make a showing sufficient to establish the existence of an element

4   essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*,

5   477 U.S. at 322. This is because "a complete failure of proof concerning an essential element of the

6   . . . party's case necessarily renders all other facts immaterial." *Id.* at 323. If the movant succeeds in

7   demonstrating the absence of a genuine issue of material fact, the burden then shifts to the

8   nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Id.* at

9   322 n.3; *see also* Fed. R. Civ. Proc. 56(c)(1)(B). A genuine issue of material fact is one that could

10  reasonably be resolved in favor of the nonmoving party, and which could "affect the outcome of the

11  suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The Court must view the

12  evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its

13  favor. *See id.* at 255.

14                              IV.     DISUSSION

15       A.  Motion for Partial Summary Judgment of Infringement

16       Malico moves for partial summary judgment that the accused devices infringe the '484

17  Patent. Although the burden rests with plaintiff to prove infringement, the only evidence it presents

18  in support of its motion are photographs of what it purports to be an accused product. It compares

19  these photographs to Figure 1 of the '484 Patent arguing that this accused product is the same as the

20  patented device and therefore infringes.[3] The photographs, however, are not sufficient to support a

21  grant of summary judgment in plaintiff's favor.

22       The technology at issue here is relatively straightforward and understandable; it is essentially

23  two pieces of molded plastic that fit together onto a CPU assembly. In such a situation, plaintiff is

24  not necessarily required to present expert testimony in support of a finding of infringement, and may

25  theoretically be able to succeed in arguing infringement simply by comparing the accused products

26  to the patent-in-suit. Summary judgment is not appropriate, however, if the non-moving party is

27  able to raise a question of material fact as to whether the accused products infringe. Defendants

28  ────────────────────────────
    [3] Defendants have moved to strike the photographs as inadmissible, and for the reasons discussed
    below, the motion to strike is granted.

**United States District Court**
For the Northern District of California

have done so here. They have introduced a report from their technical expert, Dr. Carman, opining that the accused products "do[] not infringe the claims [of the '484 Patent] because, at least, [they] lack[] positioning columns, as defined by the Court's claim construction." Expert Report of Gregory Carman, Dkt. 112-2 at 6. Dr. Carman's expert opinion refutes plaintiff's conclusion that the photographs alone it has presented establish infringement.

Given that the photographs are *not* admissible for the reasons detailed below, summary judgment must be denied in any event. Malico has had "adequate time for discovery" and yet "fails to make a showing sufficient to establish" infringement, an issue "on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Its motion must fail, therefore, because "a complete failure of proof concerning an essential element of the . . . party's case necessarily renders all other facts immaterial." *Id.* at 323. Here, the *only* admissible evidence presented on the infringement issue is Dr. Carman's expert report supporting a determination of noninfringement. The motion for partial summary judgment of infringement is therefore denied.

B. Motion to Strike Photographs

Defendants move to strike the photographs Malico introduces in support of its motion for partial summary judgment of infringement, which it argues are of an accused product, on a number of grounds. Even without addressing all defendants' inadmissibility arguments, the result is clear. The photographs purporting to be of an accused device presented for the first time in Malico's motion for partial summary judgment certainly are responsive to the written discovery that defendants' timely served. Federal Rule of Civil Procedure 37(c)(1) reads: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." "This particular subsection . . . is a recognized broadening of the sanctioning power." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). "The Advisory Committee Notes describe it as a 'self-executing,' 'automatic' sanction." *Id.* Accordingly, "[u]nder Rule 37(c)(1) . . . a court may, sua sponte, exclude evidence that a party failed to disclose under Rules 26(a) or 26(e)." *Batiz v. Am. Commercial Sec. Servs.*, 776 F. Supp. 1087, 1092 (C.D. Cal. 2011). Rule 26(e) requires:

> a party who has . . . responded to a[] . . . request for production . . . must
> supplement or correct its disclosure or response: []in a timely manner if the party
> learns that in some material respect the disclosure or response is incomplete or
> incorrect, and if the additional or corrective information has not otherwise been made
> known to the other parties during the discovery process or in writing.

At oral argument, Malico contended that it did not need to produce the photographs during discovery because they were created only recently when counsel took the images "two days" before filing plaintiff's motion for partial summary judgment of infringement. Yet, a party's own tardiness in creating a key piece of evidence on which it intends to rely in support of a dispositive motion does not excuse its failure to satisfy its disclosure obligations. If Malico elected to rely on photographs of an accused product in support of its motion, it should have taken and produced those images during discovery.

Furthermore, although Malico represents that the images are of an accused product, they have not been authenticated properly as required by Federal Rule of Evidence 901(a). The challenged photographs are attached as exhibits to the Declaration of John Whitaker in Support of Malico's Motion for Partial Summary Judgment. That declaration states that the photographs are true and correct pictures of the LSI's 22320-R product, which incorporates an infringing heat sink manufactured by Cooler Master. *See* Dkt. 103-1. The declarant further testifies that Malico purchased the depicted product in April of 2012, before the close of fact discovery. *See id.* While Malico insists it brought the pictured product to a number of events related to this litigation at which defendants were present, thereby "informally" producing it, plaintiff concedes that it did not produce it in its formal discovery responses and provides no reason for this failure.

Nor did Malico ever produce a receipt or other supporting documentation to confirm that the images depict "what [Malico] claims" they are. Fed. R. Evid. 901(a). Malico advances no indication of when and from whom the product was purchased, or "testimony of a witness with knowledge" that the heat sink pictured is an accused product as opposed to Malico's own device. Fed. R. Civ. Proc. 901(b). The LSI 22320-R product has been manufactured over the years with heat sinks from a variety of manufacturers, including that belonging to plaintiff. Other than its counsel's own unadorned statement that the heat sink depicted is an accused product, there is no evidence supporting a conclusion that the pictured device is defendants', as opposed to plaintiff's

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

own, heat sink. This problem in authenticating the photographs could have been avoided had Malico met its discovery obligations and timely produced the photographs or at least the underlying device.

Similarly, the three instances at which Malico contends it presented the device to defendants do not operate as an official and valid production. Even if the actual device had been produced to defendants, Malico makes no attempt to argue that the images presented in support of its partial motion for summary judgment were themselves produced. Legally and factually, they were never disclosed. The burden is on Malico to prove that its nondisclosure was either justified or harmless, *Yeti by Molly, Ltd.*, 259 F.3d at 1107, which it has failed to do. To the contrary, Malico has conceded that it was in possession of the pictured device long before fact discovery closed. Malico's discovery failure deprived defendants of an opportunity to have their technical expert inspect the device or to investigate its provenance and authenticity. Pursuant to Rule 37(c)(1), striking the images of a purportedly accused device is warranted as they were presented for the first time in support of plaintiff's motion for partial summary judgment on infringement.

C. Motion for Summary Determination of No Damages

Defendants move for a summary determination that regardless of whether they are liable for infringement of the '484 Patent, Malico is not entitled to any damages. Generally, a patent holder may give notice to the public that its product is patented "either by fixing the word 'patent' or the abbreviation 'pat.', together with the number of the patent . . . [or] an address of posting on the Internet . . . that associates the patented article with the number of the patent." 35 U.S.C. § 287(a). It is undisputed that Malico never marked its products with the '484 Patent designation. Tr. of Dep. of John Chang, Dkt. 99-13 at 6. Malico contends, and defendants do not dispute, that its product covered by the '484 patent was marked from 2001 to 2006 with the number of its earlier patent, U.S. Patent Number 6,153,932. *See* Flanders Damages Decl., Ex. K (Tr. of Dep. of John Chang), Dkt. 99-13 at 6; Declaration of John Chang in Support of Malico's Opposition to Defendants' Motion for Summary Judgment (Chang Decl.), Dkt. 113-1, at ¶3.[4] Beginning in 2006, Malico changed the

---

[4] Plaintiff's administrative motion to seal portions of its opposition to defendants' motion for summary determination of no damages and the Chang Declaration and supporting exhibits is granted, as they contain confidential sales information sealable under Civil Local Rule 79-5. *See* Dkt. 109.

marking of its product covered by the '484 patent to read "Int. Pat. XXXX," with the goal of notifying the public that it was covered by multiple patents internationally. *See id.*

Malico argues that marking its products with the '932 Patent, which is not a patent-in-suit, and with the phrase "Intl. Pat. XXXX" suffices as notice to the public, including defendants, that those products were covered by the '484 Patent. The statutory requirement, however, is that the marking specifically include the "number of the patent." 35 U.S.C. § 287(a). Neither of the markings Malico used gave defendants "constructive notice of *the asserted patent*." *Sentry Prot. Prods. v. Eagle Mfg. Co.*, 400 F.3d 910, 918 (Fed. Cir. 2005). Malico provides no support for the notion that the markings it used can substitute for the specific markings required by the statute.

Due to Malico's "failure so to mark, no damages shall be recovered by" it prior to defendants' receipt of actual notice of infringement to the alleged infringer. 35 U.S.C. § 287(a); *see Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993). In opposition to defendants' motion for summary judgment of no damages, Malico provided a declaration from Chang stating that in 2006, Cooler Master was a customer of Malico, and inquired about the change plaintiff had made to its products concerning the patent markings. Chang Decl. ¶4. Chang's declaration states, "Malico responded to Cooler Master that the change was made to address Malico's new patent (the '484 Patent). Thus, according to Malico, Cooler Master was given direct and actual notice that Malico's heat sink . . . was covered by . . . the '484 Patent." *Id.* For this proposition, the Chang Declaration relies on a previously unproduced exhibit, in the form of an email written in Chinese. *See id.*, Ex. 2. Defendants object that this portion of the Chang Declaration, including the attached exhibit to which it points, should be stricken as inadmissible. They also contend that Chang's summary of the email is inaccurate. As Cooler Master's objection is well taken, both paragraph 4 of the Chang Declaration and Exhibit 2 accompanying it must be stricken and excluded.[5] The only admissible evidence of the date Cooler Master received actual notice of infringement is the complaint first filed against it in the Western District of Washington on May 26, 2009.

---

[5] It is not necessary to address each and every objection defendants raise to the admissibility of paragraph 4 of, and Exhibit 2 to, the Chang Declaration. Exhibit 2 is inadmissible as it was not produced or identified during discovery nor properly authenticated.

United States District Court
For the Northern District of California

The parties proceed on the assumption that the only potentially infringing sales of Cooler Master's accused heat sinks are those that it made to LSI and those that occurred when LSI sold its devices containing Cooler Master's accused heat sinks as a component. Cooler Master has shown by undisputed evidence that LSI ceased using the accused Cooler Master heat sink as a component in its products as of March 2009, at least two months before Cooler Master received actual notice of the alleged infringement. *See* Flanders Damages Decl., Ex. F (LSI's Responses to Malico's Second Set of Interrogatories), Dkt. 99-8 at 4. Therefore, there is no evidence that Cooler Master made any sales of the accused devices after March of 2009. Damages for patent infringement may not be recovered "for any time period prior to compliance with the marking or actual notice requirements of" 35 U.S.C. Section 287(a). *Am. Med. Sys.*, 6 F.3d at 1537. As it is undisputed that Cooler Master did not sell any accused products after May 26, 2009, the date the record reflects that it was on actual notice of infringement of the '484 Patent, Cooler Master is entitled to a summary determination of no damages as a matter of law.

LSI, by contrast, had actual notice of infringement of the patent-in-suit as of March 17, 2008, and admits to continuing to sell the accused products through March of 2009. Malico provided a declaration from its counsel, John Whitaker, with accompanying letters from LSI's in-house counsel to Malico's outside counsel dated March 20, 2008, and March 17, 2008, respectively, acknowledging receipt of a letter from Malico referencing LSI's alleged infringement of the '484 Patent.[6] *See* Whitaker Decl., Exs. 1& 2, Dkt. 113-4, -5. The undisputed evidence demonstrates, therefore, that the earliest date LSI had actual notice of infringement of the '484 Patent is March 17, 2008, the earliest date of its response to Malico's infringement accusation letter. *See* Whitaker Decl., Ex. 2, Dkt. 113-5.

Theoretically, if LSI were found liable for infringement of the '484 Patent, Malico could recover damages based on the single year of LSI's sale of accused products from March 2008 through March 2009. Malico now argues that the damages to which it would be entitled in such a scenario should be calculated based on its lost profits. Malico forfeited the opportunity to recover damages based on lost profits, however, by failing to present during discovery any admissible

---

[6] The declaration only identifies two exhibits, a single letter and the settlement statement, but three exhibits have been filed with the Court.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   evidence of what those damages might be. *See Crystal Semiconductor Corp. v. TriTech*

2   *Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001) ("To recover lost profits, a patent

3   owner must prove a causal relation between the infringement and its loss of profits.") (internal

4   quotation omitted).

5        Malico did not disclose a lost profits theory of damages or any evidence in support of such a

6   theory through its Rule 26 disclosures or in its responses to any formal discovery. In response to an

7   interrogatory demanding the basis on which it had claimed the right to recover damages, Malico

8   only conclusorily noted that its damages calculation would be computed in accordance with the

9   *Georgia Pacific* factors, which provide general guidance for calculating a reasonable royalty. *See*

10  Flanders Damages Decl., Ex. H (Malico's Responses to Cooler Masters's Rogs), Dkt. 99-10 at 10;

11  *see also Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d. Cir.

12  1971). Malico is therefore left with a largely inadmissible declaration from an employee as

13  discussed above which cannot compensate for its failure to disclose properly and timely a theory of

14  damages alongside factual evidence. The complete lack of admissible evidentiary support for

15  Malico's late-disclosed lost profits theory is therefore fatal to its ability to recover such damages.

16       In light of that failure of proof, Malico now attempts to introduce new evidence through

17  declarations. Exhibit 3 to the Whitaker Declaration is a settlement statement that Malico contends

18  evidences its timely disclosure of a lost profits theory of damages. In addition, the Chang

19  Declaration contains an estimate of the damages to which Malico believes it is entitled based on a

20  lost profits theory. It purports to recite information regarding Malico's sales history and production

21  capacity. Based on the declaration's statements related to damages, Malico argues in its brief that it

22  has suffered damages of roughly $5 million.

23       Defendants object to the admissibility of Exhibit 3 to the Whitaker Declaration as well as to

24  paragraphs 2, and 6 through 11, of the Chang Declaration. As to the settlement materials, any

25  "statement made during compromise negotiations about the claim" is inadmissible, as long as it is

26  not being offered for another purpose "such as proving a witness's bias or prejudice, negating a

27

28

No. C 11-04537-RS
ORDER

contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."[7] *See* Fed. R. Evid. 408. In any event, "discussing" a lost profits damages theory in the settlement context would not remedy Malico's failure to disclose that theory and evidence supporting it during formal discovery.

The challenged paragraphs of the Chang Declaration are factual assertions about Malico's sales and production capacity. Chang states that he has "reviewed Malico's sales records of its heat sinks covered by the '484 Patent made to Cooler Master for the years 2003-2006" as well as "the purchasing and sales information that Malico keeps." Chang Decl. ¶¶ 2, 10. He then proceeds to recount purported sales figures and perform a rudimentary damages estimate based on his "best calculation" of Malico's incremental profit margin on its patented products. *Id.*

Cooler Master served discovery on Malico requesting the bases of its damages calculations, to which Malico did not respond. Having a declarant recite what purports to be Malico's sales figures is no substitute for timely producing such responsive information during discovery. Malico may not overcome its failure to abide by the discovery rules by simply announcing for the first time, in declaration form, the information it would like to introduce into evidence. The challenged paragraphs of the Chang Declaration must be excluded for the reason that Malico disclosed neither its lost profits theory of damages nor documents evidencing its sales or production capacity during discovery.

In addition, paragraphs 7, and 9 through 11, of the Chang Declaration must also be excluded because they provide an opinion about how Malico's damages should be calculated without laying a foundation for the declarant's personal knowledge of the matter as required by Federal Rule of Evidence 602. Chang does not indicate that he has any relevant knowledge or qualifications to opine on this topic, nor does he identify what methodology he used or information he relied upon to reach his conclusions.

Having failed to present any admissible evidence in support of a lost profits damages theory, Malico cannot recover such damages. That said, 35 U.S.C. § 284, provides that if LSI is liable to

---

[7] Indeed, ADR Local Rule 7-5(a)(2) makes explicit that "the contents of any written settlement conference statements" shall not be disclosed to the judge assigned to the matter or "[u]sed for any purpose . . . in any pending or future proceeding in this court."

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    Malico for infringement of the '484 Patent, Malico shall be awarded "in no event less than a

2    reasonable royalty for the use made of the invention by the infringer, together with interest and costs

3    as fixed by the court." Reasonable royalty damages may be "found by a jury, [or] the court shall

4    assess them," but in either event they may be multiplied "up to three times the amount found or

5    assessed." *Id.* "The court may receive expert testimony as an aid to the determination of damages

6    or of what royalty would be reasonable under the circumstances." *Id.* If Malico were to prevail in

7    proving LSI was liable to it for infringing the '484 Patent, it would be limited to recovering

8    damages calculated as a reasonable royalty on infringing sales by LSI from March 2008 through

9    March 2009. Accordingly, the motion for a summary determination of no damages is granted in

10   part as to Cooler Master and denied in part as to LSI.

11       D.  Motion for Summary Judgment of Invalidity Due to Obviousness

12       Defendants move for summary judgment on the basis that Malico's '484 Patent is invalid

13   due to obviousness. They argue that both independent claims of the patent are obvious over prior

14   art Smithers and Marwah, neither of which were before the Examiner during the prosecution of the

15   '484 Patent. They further contend several other prior art references, Lo, Lin, and Liang, support the

16   common knowledge and inferences which would be drawn by one of ordinary skill in the art. In

17   support of their motion, defendants present documents from the '484 Patent's prosecution history as

18   well as a declaration from their technical expert, Dr. Carman, opining that while the '484 Patent

19   presents a good design solution to a known problem, it is not an invention, because it merely

20   combines elements of earlier devices in a predictable way that would have been obvious to one of

21   ordinary skill in the art. *See* Carman Decl. ¶ 23.

22       Malico's opposition relies primarily on attorney argument disagreeing with the conclusions

23   of Dr. Carman. The only evidence to which it points is a single paragraph of the Chang Declaration

24   submitted in opposition to Defendant's motion for summary determination of no damages, stating

25   that the volume of sales for Malico's devices covered by the earlier '932 Patent dropped

26   dramatically after the introduction of the new products covered by the '484 Patent.[8] *See* Declaration

27

28   [8] As noted in connection with the motion for summary determination of no damages, defendants
     have objected to several paragraphs of the Chang Declaration, including this one. For the reasons
     discussed below regarding that motion, defendants' objections are sustained. Accordingly, Malico

of John Chang in Support of Malico's Opposition to Defendants' Motion for Summary Judgment (Chang Decl.), Dkt. 113-1, at ¶11. Defendants have met their burden of presenting clear and convincing evidence of invalidity while Malico has failed to introduce any admissible evidence, let alone sufficient evidence, to create an issue of material fact as to obviousness.

i. Obviousness Standard

"Obviousness is a question of law, premised on underlying factual determinations." *Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 722-23 (Fed. Cir. 2002). "Therefore, a district court properly may grant summary judgment on obviousness . . . only when the underlying factual inquiries present no lingering genuine issues." *Id.* at 723. "An obviousness inquiry assesses 'the differences between the subject matter sought to be patented and the prior art' to ascertain whether 'the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.'"[9] *Id.* at 725 (quoting 35 U.S.C. § 103(a)). "The underlying factual inquiries are: (1) the scope and content of the prior art; (2) the level of ordinary skill in the prior art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of nonobviousness." *Id.* at 725-26 (internal quotation omitted).

In particular, the party "alleging invalidity must show prior art references which alone or combined with other references would have rendered the invention obvious to one of ordinary skill in the art at the time of invention." *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323 (Fed. Cir. 1999). "A person of ordinary skill is also a person of ordinary creativity, not an automaton." *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 421 (2007). "Common sense teaches, however, that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.* at 420. "[T]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *Id.* at 416.

has not presented *any* admissible evidence in opposition to defendants' motion for summary judgment on invalidity.
[9] Malico presents the incorrect legal standard, confusing obviousness with the related, but different, concept of whether a patent is anticipated by prior art. A claim is only anticipated if every limitation of the claimed invention is found in a single prior art reference. *See Brown v. 3M*, 265 F.3d 1349, 1351 (Fed. Cir. 2001).

No. C 11-04537-RS
ORDER

18

"The party seeking patent invalidity based on obviousness must also show some motivation or suggestion to combine the prior art teachings." *Al-Site Corp.*, 174 F.3d at 1323-24. "One of the ways in which a patent's subject matter can be proved obvious is by noting that there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent's claims." *KSR*, 550 U.S. at 419-20.

Given that patents are strongly presumed to be valid, *see* 35 U.S.C. § 282, however, "a defendant must show invalidity by facts supported by clear and convincing evidence." *Beckson Marine*, 292 F.3d at 725. As it is presumed "that the Examiner did his duty and knew what claims he was allowing," it follows that, "the challenger's burden is especially difficult when the prior art was before the PTO examiner during prosecution of the application." *Al-Site Corp.*, 174 F.3d at 1323 (internal quotations omitted).

ii.    Analysis of Obviousness

Defendants' technical expert, Dr. Carman, declares that the claims of the '484 Patent are "invalid as obvious over Smithers alone or in the alternative in view of Marwah and/or Lin." Carman Decl. ¶ 39. Carman concludes that Smithers discloses every limitation of claim 1 except, arguably, "pads," although it inherently teaches and suggests the use of structures similar to pads. *Id.* ¶¶ 26, 30. In any event, he characterizes pads as a well-known technique to one of ordinary skill in the art, such that it would have been obvious to combine the use of pads with the teachings of Smithers. *See id.* ¶ 30.

Defendants, relying on Dr. Carman, conclude that each limitation of claim 1, other than pads, is disclosed by Smithers. *See also id.* at ¶¶ 28-29. While Smithers does not explicitly teach pads, such teaching is inherent in Smithers, defendants argue, because it refers to "pads" as a height adjustment where the resilient legs contact the top surface of the heat dissipater and, one of ordinary skill in the art, reading Smithers and looking at its figures, would understand that the material defining the bottom of the gap between the fins should be of the appropriate height to contact the resilient legs. *Id.* ¶ 30.

Even if Smithers does not explicitly teach pads, prior art Liang makes clear that heat sink dissipaters without pads were well known in the art. Defendants argue that generally, using pads to

United States District Court

For the Northern District of California

allow for height adjustment was a well known technique in mechanical engineering. This contention is supported both by Dr. Carman's declaration and, the express teaching of prior art Marwah, not presented to the Examiner during the prosecution of the '484 Patent, that pads can be used to adjust for height differences in heat sinks. *See id.* ¶ 31. Dr. Carman opines that Marwah "expressly teaches that pads can be used to accommodate for height differences." *Id.* Furthermore, "it would be obvious to one having ordinary skill in the art to add pads (spacers), if needed, to the top surface of the heat dissipater in the gaps . . . to accommodate different heights." *Id.*

Defendants further argue that the "problem" to be solved by the '484 Patent, that conventional heat dissipaters could not accommodate different heights, was well known at the time. For example, it was identified explicitly in Lo. *See* Lo, col. 1 ll.40-42 ("The prior art locking device described above is only adapted for locking CPU packages of a fixed thickness."). Common knowledge of the problem at the time of the invention would motivate a person of ordinary skill in the art to make an obvious modification to, or combination of, the teachings of the prior art Smithers and Marwah to achieve what is covered by claim 1 of the '484 Patent.

Claim 2 is the same as claim 1, except that it requires recesses instead of pads. Using recesses as a height accommodation was well known in the art at the time and is disclosed by Lin. *See* Carman Decl. ¶ 36; Lin, col. 3 ll. 8-10. Defendants contend that a person of ordinary skill in the art and of ordinary creativity would have combined Smithers with the recess technology of Lin to accomplish claim 2. *See* Carman Decl. ¶¶ 37-38.

Malico proclaims its disagreement with Dr. Carman's conclusions, but offers no technical evidence to contradict them. Contrary to Dr. Carman's opinion, Malico insists that Smithers does not disclose every limitation of claim 1 of the '484 Patent. For example, it disputes that the "curved beam" in Smithers is structurally equivalent to the "resilient leg with bent" in the '484 Patent. Yet, "[a]ttorney argument is no substitute for evidence" and is not sufficient to create a genuine issue of material fact. *See Johnston v. IVAC Corp.*, 885 F.2d 1574, 1581 (Fed. Cir. 1989). As Malico has failed properly to "support [its] assertion[s] of fact" and to "address" defendants' "assertion of fact" with evidence, the grant of summary judgment of invalidity for obviousness is appropriate. Fed. R. Civ. Proc. 56(e).

No. C 11-04537-RS
ORDER

The only evidence presented by Malico in opposition to the motion for summary judgment is a single paragraph of the Chang Declaration stating that "demand for the product covered by the '932 Patent has drastically diminished since the introduction of the product covered by the '484 Patent." Chang Decl. ¶ 11. Malico argues that because the hitherto successful patented invention faced a negative competitive impact from the advent of the infringing product, the patented invention must not have been obvious. At the outset, that statement from Chang's declaration is not admissible for the reasons noted above in the context of the damages motion. In any event, it is unclear how such sales numbers would prove nonobviousness. Left unexplored, for example, is whether Malico continued producing the device covered by the '932 Patent after it began making the product covered by the '484 Patent. "A highly successful product alone [is not enough to] overcome a strong showing of obviousness." *See Media Techs. Licensing v. Upper Deck Co.*, 596 F.3d 1334, 1339 (Fed. Cir. 2010). Even if admissible, Chang's declaration regarding relative sales, standing alone, is insufficient to defeat summary judgment.

The Carman Declaration, considered in conjunction with the Smithers and Marwah prior art, neither of which were before the Examiner when he allowed the '484 Patent to issue, is clear and convincing evidence of invalidity. Defendants have met the high burden required to overcome the presumption of validity accorded to the '484 Patent. Malico, having failed to submit any admissible evidence in opposition to the motion, has not raised a question of material fact appropriate for trial as to whether the '484 Patent is invalid for obviousness. Summary judgment of invalidity due to obviousness is therefore appropriate.

## V.    CONCLUSION

Defendants' motion for summary judgment of invalidity due to obviousness is granted. Even if the '484 Patent were valid, Malico's motion for partial summary judgment of infringement would be denied for the reasons set forth above. Defendants' motion to strike the photographs presented by Malico as evidence in support of its partial motion for summary judgment of infringement is granted. Defendants' motion for summary determination of no damages is granted with respect to Cooler Master and denied with respect to LSI. A separate judgment will issue in conjunction with this decision.

1        IT IS SO ORDERED.

2     Dated: 8/20/13

3                                              RICHARD SEEBORG
                                               UNITED STATES DISTRICT JUDGE
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

No. C 11-04537-RS
ORDER

(12) **United States Patent**

Liang

(10) Patent No.: **US 6,476,484 B1**

(45) Date of Patent: **Nov. 5, 2002**

(54) **HEAT SINK DISSIPATOR FOR ADAPTING TO THICKNESS CHANGE OF A COMBINATION OF A CPU AND A CPU CARRIER**

(75) Inventor: **Robert Liang**, Taoyuan Hsien (TW)

(73) Assignee: **Malico Inc.**, Taoyuan Hsien (TW)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/924,663**

(22) Filed: **Aug. 8, 2001**

(51) Int. Cl.⁷ ............................................... **H01L 23/34**

(52) U.S. Cl. ...................... **257/718**; 257/712; 257/713; 257/706; 257/718; 257/719; 257/722; 257/723; 257/724; 257/725; 257/726; 257/727; 361/703; 361/704; 439/71; 439/72; 439/73; 439/487

(58) Field of Search ................................ 251/722, 706, 251/707, 718, 719, 723–727

(56) **References Cited**

U.S. PATENT DOCUMENTS

5,421,402 A * 6/1995 Lin ........................... 165/80.3

| | | | |
|---|---|---|---|
| 5,660,562 A | * | 8/1997 | Lin ............................. 439/487 |
| 6,015,301 A | * | 1/2000 | Brodsky et al. .............. 439/73 |
| 6,086,387 A | * | 7/2000 | Gallagher et al. ........... 439/71 |
| 6,201,697 B1 | * | 3/2001 | McCullough ............... 361/704 |
| 6,243,266 B1 | * | 6/2001 | Lo ............................ 361/704 |

* cited by examiner

Primary Examiner—Nathan J. Flynn
Assistant Examiner—Fazli Erdem

(57) **ABSTRACT**

A heat sink dissipater includes a retaining device and a heat dissipater. A plurality of fins and a plurality of pads or recesses are integrally formed on the top surface of the heat dissipater. A plurality of resilient legs extend inward from the sides of the retaining device. Retaining edges are also formed on two sides of the retaining device. The resilient legs fall into the gaps between the fins when the retaining device is positioned on the heat dissipater to secure a CPU assembly. In an orientation, the legs are placed on the pads or recesses of the heat dissipater and in an orthogonal orientation, the legs are placed directly on the top surface of the heat dissipater. Therefore, CPU assemblies of different thickness can be accommodated by rotating the retaining device or the heat dissipater 90 degrees.

**2 Claims, 4 Drawing Sheets**





**FIG. 1**



**FIG. 2**



**FIG. 3A**



**FIG. 3B**



**FIG. 4A**



**FIG. 4B**

1

# HEAT SINK DISSIPATOR FOR ADAPTING TO THICKNESS CHANGE OF A COMBINATION OF A CPU AND A CPU CARRIER

## FIELD OF THE INVENTION

The present invention relates to a heat sink dissipater, and more particularly to a beat sink dissipater for use with a combination of a CPU and a CPU carrier of different thickness so that a new mold for a heat dissipater for adapting to a combination of a CPU and a PC board with specific thickness is not necessary.

## BACKGROUND OF THE INVENTION

With reference to FIG. 1, a CPU assembly normally has a CPU 10 mounted on a PC board 11 and a main board 12 securely engaged with the PC board 11. That is, a combination of the CPU 10, the PC board 11 and the main board 12 has thickness A. When a conventional heat dissipater is to be mounted on the CPU 10 for dissipating beat generated by the operation of the CPU 10, a retaining device 20 is necessary.

The retaining device 20 has two retaining edges 21 respectively formed on opposite sides of the retaining device 20. Bach retaining edge is formed with a barb 211. Multiple resilient legs 22 respectively extend inward from sides of the retaining device 20 adjacent to the sides of the retaining edges 21, and each resilient leg has a bent 221.

When the retaining device 20 is employed to fix the conventional heat dissipater with multiple columns and rows of fins onto the CPU 10, the resilient legs 22 extend into gaps between fins and the bents 221 engage the top face of the CPU 10 to abut the CPU 10 to the PC board 11. Then the retaining edges 21 secure the PC board 11 by means of the barbs 211. However, when another combination having only the CPU 10 and the main board 12 and thus having less thickness compared to the thickness of the previously described combination is used and the same conventional heat dissipater has to be used to dissipate the heat from the CPU 10, a new retaining device is to be developed to adapt to the variation in thickness. Changing the thickness of the combination of the CPU assembly often means a new retaining device or a new heat dissipater, which is quite a waste in cost.

To overcome the shortcomings, the present invention intends to provide an improved heat dissipater to mitigate or obviate the aforementioned problems.

## SUMMARY OF THE INVENTION

The primary objective of the invention is to provide a heat sink dissipater having multiple pads integrally formed on the heat sink dissipater so that when the thickness of the combination of the CPU and the CPU carrier is reduced, the bents of the resilient legs can still engage the pads to securely fix the heat sink dissipater onto the CPU.

Another objective of the invention is to provide a heat sink dissipater having multiple recesses integrally formed on the heat sink dissipater so that when the thickness of the combination of the CPU and the CPU carrier is increased, the bents of the resilient legs can still engage bottom faces defining the recesses to securely fix the heat dissipater onto the CPU.

Other objects, advantages and novel features of the invention will become more apparent from the following detailed

2

description when taken in conjunction with the accompanying drawings.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is an exploded perspective view of the heat sink dissipater of the present invention and the retaining device and the CPU assembly of the first type.

FIG. 2 is an exploded perspective view of FIG. 1 in a different orientation and the retaining device and the CPU assembly of the second type.

FIG. 3A is a cross sectional view of the assembled retaining device, the heat sink dissipater and the CPU assembly of the first type.

FIG. 3B is a cross sectional view of the assembled retaining device, the heat sink dissipater and the CPU assembly of the second type.

FIGS. 4A and 4B arm cross sectional views of still another preferred embodiment of the invention, wherein the beat sink dissipater has recesses defined in a top face of the heat sink dissipater.

## DETAILED DESCRIPTION OF THE INVENTION

Because the retaining device 20 and the CPU assembly including the first type and the second type are still the same, the same reference numerals are designated to the same elements and are still used to describe the applicability of the heat sink dissipater in accordance with the present invention. Furthermore, the retaining device 20 has two positioning columns 23 each formed on opposite side faces of the retaining device 20.

With reference to FIGS. 1, 2, 3A and 3B, the heat sink dissipater 30 has multiple columns and rows of fins 31 and two pairs of pads 32 integrally formed on opposite sides of a top face of the heat sink dissipater 30. According to the configuration of the beat sink dissipater 30, when the CPU assembly includes the CPU 10, the PC board 11 and the main board 12, the bents 221 of the resilient legs 22 extend to gaps between fins 31 to securely engage the heat sink dissipater 30 to the CPU 10. When the CPU assembly includes only the CPU 10 and the main board 12, that is, the thickness of the CPU assembly in FIG. 2 is less than the thickness of the CPU assembly in FIG. 1, the user is able to rotate the heat sink dissipater 30 or the retaining device 20 (as shown in FIG. 2) by 90 degree to allow the resilient legs 22 to extend to gaps between fins 31 to engage the pads 32. Thus, even though the thickness of the CPU assembly is variant, the heat sink dissipater 30 can still be used to different types of CPU assembly with different thickness. Still, the positioning columns 23 are able to abut side faces of the heat sink dissipater 30 and the CPU 10 to avoid the movement of the CPU 10 and the heat sink dissipater 30 when the installation of the heat sink dissipater 30 and the CPU 10 is finished.

With reference to FIGS. 4A and 4B, another preferred embodiment of the invention is shown. The heat sink dissipater 30A has multiple columns and rows of fins 31A and pairs of recesses 33 each defined in opposite sides of a top face of the heat sink dissipater 30A. According to the configuration of the heat sink dissipater 30A, when the CPU assembly includes the CPU 10, the PC board 11 and the main board 12, due to the increase in thickness, the bents 221 of the resilient legs 22 extend to gaps between fins 31A to securely engage bottom faces defining the recesses 33. When the CPU assembly includes only the CPU 10 and the main board 12, that is, the thickness of the CPU assembly in

3

4

FIG. **4**B is less that the thickness of the CPU assembly in FIG. **4**A, the user is able to rotate the heat sink dissipater **30**A or the retaining device **20** to allow the resilient legs **22** to extend to gaps between fins **31**A to engage the top face of the heat sink dissipater **30**A. Thus, even though the thickness of the CPU assembly is variant, the heat sink dissipater **30**A can still be used to different type of CPU assembly with different thickness.

Even though numerous characteristics and advantages of the present invention have been set forth in the foregoing description, together with details of the structure and function of the invention, the disclosure is illustrative only, and changes may be made in detail, especially in matters of shape, size, and arrangement of parts within the principles of the invention to the full extent indicated by the broad general meaning of the terms in which the appended claims are expressed.

What is claimed is:

1. A heat sink dissipater, comprising:

a retaining device having a pair of positioning columns formed on first two opposite sides, a pair of retaining edges formed on second two opposite sides, and a plurality of resilient legs extending inwards from said first or second two opposite sides, said retaining edges each being formed with a barb and said resilient legs each having a bent;

a heat dissipater having a plurality of fins formed on a top surface and a plurality of a gaps between said fins, said resilient legs failing into said gaps when said retaining device is positioned on said heat dissipater in a first orientation or a second orientation orthogonal to said first orientation; and

plurality of pads formed between fins on said top surface of said heat dissipater;

wherein the bent of each resilient leg is placed on a pad when said retaining device is positioned on said heat dissipater in said first orientation, and each resilient leg is placed directly on said top surface when said retaining device is positioned on said heat dissipater in said second orientation.

2. A heat sink dissipater, comprising:

a retaining device having a pair of positioning columns formed on first two opposite sides, a pair of retaining edges formed on second two opposite sides, and a plurality of resilient legs extending inwards from said first or second two opposite sides, said retaining edges each having formed with a barb and said resilient legs each having a bent;

a heat dissipater having a plurality of fins formed on a top surface and a plurality of gaps between said fins, said resilient legs railing into said gaps when said retaining device is positioned on said heat dissipater in a first orientation or a second orientation orthogonal to said first orientation; and

a plurality of recesses formed on said top surface of said heat dissipater;

wherein the bent of each resilient leg is placed on a recess when said retaining device is positioned on said heat dissipater in said first orientation, and each resilient leg is placed directly on said top surface when said retaining device is positioned on said heat dissipater in said second orientation.

* * * * *

# CERTIFICATE OF SERVICE

𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
𝔣𝔬𝔯 𝔱𝔥𝔢 𝔉𝔢𝔡𝔢𝔯𝔞𝔩 𝔆𝔦𝔯𝔠𝔲𝔦𝔱
No. 2013-1680

----------------------------------------------------------

Malico, Inc.
      Plaintiffs – Appellants,
        v.
Cooler Master and LSI Logic Corporation,
      Defendant – Appellee.

----------------------------------------------------------

I, Anne K. Smart, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

On January 3, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: January 3, 2014                /s/   Anne K. Smart

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

This brief contains **4240** words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(&)B)(iii) and Federal Circuit Rule of Appellate Procedure 32(b).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

This brief has been prepared in a proportionally spaced typeface using LibreOffice in a 14 point "Georgia" font.

Dated: December 19, 2013    Respectfully submitted,

*/s/  Philip P. Mann*
Philip P. Mann, WSBA 28860
MANN LAW GROUP
1218 Third Avenue, Suite 1809
Seattle, WA  98101
(206) 436-0900
phil@mannlawgroup.com

Attorney for Plaintiffs-Appellants,
Malico Inc.